# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON PIERCE,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:16-cv-01452-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 17, 18, 19) |

## I.

## INTRODUCTION

Plaintiff Vernon Pierce ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from hypertension, diabetes mellitus with peripheral neuropathy, carpal tunnel syndrome past left upper extremity, obesity, lower back pain with degenerative disc disease, and diabetes mellitus retinopathy. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on January 22, 2013. (AR 114, 115.) Plaintiff's applications were initially denied on May 17, 2013, and denied upon reconsideration on January 17, 2014. (AR 146-150, 154-158.) Plaintiff requested and received a hearing before Administrative Law Judge G. Ross Wheatley ("the ALJ"). Plaintiff appeared for a hearing on December 11, 2014. (AR 48-93.) On February 27, 2015, the ALJ found that Plaintiff was not disabled. (AR 30-43.) The Appeals Council denied Plaintiff's request for review on Jul 29, 2016. (AR 1-4.)

### A. Relevant Hearing Testimony

Plaintiff testified at the hearing on December 11, 2014. (AR 53-84, 91-92.) Plaintiff was born on October 6, 1962, and was 52 years old on the date of the hearing. (AR 53.) Plaintiff is 6 foot 2 inches tall and weighs 277 pounds. (AR 53.) Plaintiff did not graduate from high school but did get his GED. (AR 53.) He attended junior college but did not receive a degree or certificate. (AR 54.) Plaintiff is able to read and write. (AR 55.) Plaintiff has a driver's license and does drive. (AR 77.) Plaintiff drove an hour to the hearing in the rain. (AR 77.) There was a storm and the roads were flooded so Plaintiff had to drive in the slow lane. (AR 77.)

Plaintiff has worked as a warehouse manager, forklift operator, truck driver, and roughneck. (AR 54.) He does not have a commercial driver's license. (AR 55.) Plaintiff stopped working in 2012 because he hurt himself and they closed part of the plant. (AR 56.) During 2012, he was on salary but he mostly worked part time because he hurt his back and knee trying to break a sow. (AR 57-58.) Plaintiff applied for and received unemployment benefits after he stopped working until sometime in 2014. (AR 60.) Plaintiff thought that he would be able to work but he started getting more pain in his feet. (AR 61.) Plaintiff was talking to a slaughter house about a job but they decided that he was a liability because of their insurance with OSHA. (AR 60-61.)

Plaintiff amended his alleged onset date to August 15, 2012. (AR 59.) Plaintiff suffers

from nerve damage due to diabetes that affects his feet, low back pain with a bulging disc, hypertension, carpal tunnel, and retinopathy. (AR 59.) Plaintiff is unable to work due to the pain in his feet and shooting pain and numbness in his fingers from neuropathy. (AR 61, 62.) He had surgery on his elbow and now he has numbness. (AR 61.) When he tries to pick up something it will fall out of his hand. (AR 61.) Plaintiff has a bullet in his shoulder and has headaches from when he was shot in the head. (AR 91-92.) Plaintiff was shot twice, once when he was 8 years old and when he was an adult. (AR 92.) Plaintiff has a bullet in him that they say will do more damage if it is removed. (AR 92.) When the weather is cold he has a lot of shoulder pain. (AR 92.)

Plaintiff receives medical treatment from the Veteran's Administration. (AR 63.) He has been there twice in the last two weeks. (AR 63.) He had to go to podiatry because he was trying to take care of his own feet. (AR 63.) He pulled some dead skin off and his foot started bleeding and a nail came off. (AR 63.) Plaintiff's feet are starting to turn colors. (AR 64.) Plaintiff is taking two kinds of medication for his diabetes. (AR 64.) He has been testing his blood sugar twice a day for a while. (AR 64.) He has been taking insulin for six or seven months. (AR 64.) Plaintiff did not used to be good about testing his blood sugar but he has gotten better. (AR 65.) His blood sugars fluctuate and he has an appointment to see the doctor again next month. (AR 65-66.) Plaintiff talked to the doctor on the phone and was told that his blood sugars are good but the doctor wants them to be lower. (AR 66.) The doctor told Plaintiff to exercise, but it is hard for Plaintiff to walk because of his feet pain and he stiffens up. (AR 66.) Plaintiff tries to do what he can with his hands. (AR 66.) Plaintiff is also supposed to be adjusting his diet, eating baked foods and more vegetables. (AR 67.)

Some days Plaintiff's back is so bad he is not able to get out of bed. (AR 68.) Plaintiff has a TENs unit, but the only thing that seems to work is a heating pad and using Tiger Balm. (AR 68-69.) Plaintiff takes Oxycodone for the pain. (AR 69.) Plaintiff is only supposed to take it five times a day, but sometimes takes more because of the pain. (AR 69.) Plaintiff has never had spinal injections and surgery has not been recommended for his back. (AR 69, 70.) Plaintiff did go to physical therapy and tried it but it did not do him any good. (AR 70.) The only thing

that seemed to help a little bit was having his one-year old grandbaby climb around on his back. (AR 70.) Plaintiff takes medication for his blood pressure and when they check his levels they are perfect. (AR 70-71.)

Plaintiff had carpal tunnel surgery on his left side. (AR 71.) Plaintiff has numbness after the surgery. (AR 71.) Plaintiff also has numbness in his right hand because his arm went through a glass window and he has nerve damage. (AR 71-72.) Plaintiff wears bilateral braces at night. (AR 72.) It is supposed to help with the numbness but it does not. (AR 72.) Plaintiff also wears diabetic stockings and shoes. (AR 72.) The diabetic stockings help and he is taking Gabapentin that helps a little bit better than his prior medication. (AR 73.)

Plaintiff is able to take care of his personal care. His twenty-one year old son lives with them and helps out around the house. (AR 73, 73-74.) Plaintiff sometimes cooks. (AR 74.) He will make a salad and bake some chicken, use the microwave, or make a sandwich. (AR 74.) Plaintiff will sometimes take out the trash, but does not sweep, mop, or vacuum. (AR 74.) His wife picks up thinks around the house, makes the bed, and does the dishes. (AR 74.) Plaintiff's wife will sometimes have him carry the laundry basket downstairs. (AR 75.) His daughter helps when she comes over. (AR 75.) Plaintiff will look through the ads to see what grocery sales are going on. (AR 75.) Plaintiff watches about ten hours of television a day. (AR 75.) Plaintiff's wife owns a computer which Plaintiff knows how to use but he does not use it. (AR 76.) Plaintiff has an e-mail account but does not text. (AR 76.) Plaintiff goes shopping once every couple of weeks. (AR 77.)

Plaintiff drives to the doctor for himself or his wife which is about a 15 to 20 minute drive. (AR 78.) He goes to doctor's appointments at the VA which are in Livermore or Palo Alto. (AR 78.) If he goes to Palo Alto he might drive one way and his wife will drive the other way. (AR 78.) In the last year, the longest Plaintiff has driven was from his house to Oakland and then to Palo Alto. (AR 78.)

Plaintiff's hobby is fishing and he last went fishing in June or July. (AR 79.) Plaintiff is a pretty good fisherman. (AR 79.) Plaintiff recently started smoking and somedays smokes one half pack a day. (AR 81.) Plaintiff smokes when he is stressed. (AR 81.) He gets stressed

because he is not able to work doing the things he used to do. (AR 82.)

Plaintiff has eight grandchildren. (AR 82.) One of them likes to come over and run around the house. (AR 82.) She will climb up in Plaintiff's lap and ask him to read her a book or take him to the refrigerator to get her some juice. (AR 82-83.) The other grandchildren just want to run around and play with the water hose and sit and throw rocks. (AR 83.)

Plaintiff can do a little bit of walking but not a lot. (AR 67.) He goes into the grocery store with his wife. (AR 67.) Plaintiff's vision is blurry in the morning when he wakes up. (AR 83.) He will go back to sleep and then his vision will be fine when he wakes back up. (AR 83-84.) Plaintiff can see far off but has difficulty seeing up close so he got himself 200 percent magnifying glasses that he uses to read. (AR 83.)

Plaintiff takes two shots in the morning and nine pills. (AR 84.) Plaintiff's medications make him have stomach aches, diarrhea, and headaches. (AR 84.) If Plaintiff does not take his Gabapentin his feet, legs, and hands feel like they are on fire. (AR 84.) Plaintiff will take Oxycodone when he is really in pain. (AR 84.) He tried Lyrica but it made everything worse. (AR 84.) His current medication makes it where he can almost tolerate the pain. (AR 84.)

A vocational expert, George A. Meyers also testified at the hearing. (AR 85-91.)

**B.  ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.
- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 15, 2012.
- Plaintiff has the following severe impairments: diabetes mellitus with peripheral neuropathy, carpal tunnel syndrome past left upper extremity, obesity, lower back pain with degenerative disc disease, and diabetes mellitus retinopathy.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments;
- Plaintiff has the residual functional capacity to perform light work. Plaintiff can lift or

1    carry 20 pounds occasionally and 10 pounds frequent and stand and walk 6 hours in an 8 hour workday. Plaintiff requires a sit-stand option allowing him to sit and stand at will provided he is not off task more than ten percent of the workday. Plaintiff can sit six hours in an eight hour workday; occasionally climb ladders, ropes, or scaffolds, stoop and crouch and frequently climb ramps or stairs, balance, kneel, or crawl. Plaintiff should avoid concentrated exposure to hazardous machinery and unprotected heights. He can frequently reach, handle, and finger with the upper left extremity.

- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on October 6, 1962, and was 49 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date. He subsequently changed age category to closely approaching advanced age.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled" whether or not he has transferable job skills.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from August 15, 2012, through the date of the decision.

(AR 35-42.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step

sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting

Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons to reject his testimony. Plaintiff states that the three reasons provided by the ALJ to discount his credibility are not sufficient to support the adverse credibility finding. Defendant counters that the ALJ provided legally sufficient reasons for the adverse credibility finding that are supported by substantial evidence in the record.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff has pain that could reasonable expected to cause the alleged limitations, but did not find Plaintiff's alleged limitations credible. (AR 39.) While not entirely clear, the ALJ rejected Plaintiff's credibility based upon his daily activities, failure to comply with treatment, treatment has been conservative in nature, and the allegations are not supported by the objective medical evidence. (AR 39-40.)

**A.  Daily Activities**

There are two grounds to use daily activities for an adverse credibility finding. Orn, 495 F.3d at 639. First, daily activities can form the basis of an adverse credibility determination if the claimant's activity contradicts his testimony. Id. Secondly, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' " Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). .

The ALJ noted that Plaintiff was able to climb a flight of stairs, perform activities of daily living, grocery shop, mow the lawn for 15 minutes with a walking power mower, shower

and dress independently, prepare meals, and watch television 10 hours per day. (AR 39-40, 460, 508.) "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." Orn, 495 F.3d 625, 639 (9th Cir. 2007) (citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The ALJ did not specify the functional limitation testimony that was inconsistent with Plaintiff's alleged activities or explained how the activities meet the threshold for transferable work skills.

The ALJ did note in his opinion that Plaintiff claimed to have last worked in August 2012, (AR 39, 56), and earlier in the opinion noted that the record indicated that Plaintiff was working on January 18, 2013, (AR 37, 384). (See also AR 66.) While this may be a clear and convincing reason to reject Plaintiff's credibility the ALJ did not specify this as a reason for the adverse credibility findings and this Court cannot consider this post hac.

Therefore, the Court finds that Plaintiff's daily activities, as set forth by the ALJ, are not a clear and convincing reason for an adverse credibility finding.

### B. Conservative Treatment

The ALJ found that Plaintiff's treatment had been "essentially routine and/or conservative in nature[;]" and while Plaintiff had surgery on his left arm impairment, the record reflects that the surgery was generally successful. (AR 40.) Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Plaintiff argues that the ALJ cannot use the failure to seek more aggressive treatment where no such treatment exists.

Here, Plaintiff alleged that he was unable to work due to the pain in his feet and shooting pain and numbness in his fingers from neuropathy. (AR 61, 62.) Plaintiff was prescribed medication to address his neuropathic pain, and the record does not reflect that more aggressive treatment options are available. See Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (unpublished).[2] In the circumstances presented here, the Court finds that Plaintiff's

---

[2] Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b); see Animal Legal Def. Fund v. Veneman, 490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority").

conservative treatment is not a clear and convincing reason to reject his credibility.

### C. Failure to Comply With Treatment Recommendations

Although Plaintiff did not address his failure to seek treatment, the ALJ also found that Plaintiff failed to follow-up on treatment recommendations made by his treating physician which suggests that the symptoms are not as severe as alleged. (AR 41.) An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony. Fair, 885 F.2d at 603.

Specifically, the ALJ addresses that Plaintiff was advised to monitor his fasting blood sugars and report the readings; make lifestyle modifications to lose weight, continue on his medications, take insulin, and check his HbAIC as ordered. (AR 37, 38, 349, 383, 467-470.) On multiple occasions, Plaintiff admitted that he was not checking his fasting blood sugar. (AR 37, 38, 352, 629.) On June 12, 2014, the consultative examiner noted that Plaintiff had advancing diabetes mellitus and poor dietary control was a major contributing factor. (AR 38, 632.) On September 16, 2014, Plaintiff admitted that he was not checking his glucose, was eating poorly at times, and was not exercising much. (AR 38, 626.) In October 2014, the examiner noted that Plaintiff had a history of poorly controlled diabetes. (AR 39, 630, 632.) Further review of the record demonstrates that there is substantial evidence that Plaintiff failed to comply with the recommendations of his treating physician. (AR 581, 614, 640, 673-675, 669, 743.)

Plaintiff's failure to comply with the treatment recommendations of his treating physician is a clear and convincing for the adverse credibility finding.

### D. Objective Medical Evidence

The ALJ found that the objective medical evidence did not support the claimed limitations. (AR 40.) Plaintiff argues that the ALJ merely provided a five page summary of the medical evidence and intertwined in the summary is boiler plate language finding Plaintiff's symptoms not credible. However the ALJ included a discussion directly discussing the reasons that Plaintiff's allegations were found to be not credible. (AR 39-40.)

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the

claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ pointed to Plaintiff's allegations that he was continuing to have symptoms in his left upper extremity after having undergone carpal tunnel surgery. (AR 40.) At the December 11, 2014 hearing, Plaintiff testified that he has continued to have numbness after the surgery. (AR 71.) He had surgery on his elbow and now he has numbness. (AR 61.) Plaintiff also has numbness in his right hand because his arm went through a glass window and he has nerve damage. (AR 71-72.) Plaintiff wears bilateral braces at night that are supposed to help the carpal tunnel and numbness but it does not. (AR 72.) When he tries to pick up something it will fall out of his hand. (AR 61.)

But the ALJ noted that while Plaintiff did have surgery on his left arm, it was generally successful. (AR 40, 432, 441-448, 537, 538.) The ALJ also noted that Dr. Malik's[3] December 12, 2013 examination revealed peripheral pulses were 2+ bilaterally in the upper and lower extremities, power was 5/5 throughout, grip strength was 5-/5 on the left and right. (AR 40, 509.) Substantial evidence in the record supports the ALJ's finding that the objective medical evidence contradicts Plaintiff's allegations regarding his hand and arm limitations.

The ALJ's finding that the objective medical evidence does not support Plaintiff's allegations of severe and disabling pain is a clear and convincing reason to reject such testimony.

**E.      Past Work History**

Finally, Plaintiff argues that the ALJ erred by failing to consider his work history which shows that he worked from 2002 to 2007 and from 2010 to 2012. Plaintiff argues that an individual who has a continuous work history for nine years does not decide to not show up for

---

[3] Although the ALJ referred to Dr. Ritu, the record notes that the internal medicine consultative examination was conducted by Dr. Ritu Malik.

12

work without good reason. (Pl. MSJ at 17.) However, Plaintiff did not work for nine continuous years. Plaintiff worked in 1999, and did not work in 2000 or 2001. (AR 230.) Plaintiff worked for approximately five years from 2002 to 2007. (AR 230.) Did not work for approximately three years from 2007 to 2010, and then worked for approximately two years from 2010 to 2012 and some of this was part-time. (AR 57-58, 330.) Further, the ALJ did consider Plaintiff's work history and found that while Plaintiff may no longer be able to perform medium to heavy work, he retained the capacity to perform light work. (AR 39.)

Finally, this Court has previously rejected the argument that the ALJ is required to discuss a claimant's work history in the credibility discussion where it is addressed in the opinion and the ALJ provided other clear and convincing reasons to reject the claimant's testimony. See Reyes v. Comm'r of Soc. Sec., No. 1:15-CV-01436-SAB, 2016 WL 7034741, at *11 (E.D. Cal. Dec. 1, 2016); Rocha v. Comm'r of Soc. Sec., No. 1:15-CV-01298-SAB, 2016 WL 7034739, at *16 (E.D. Cal. Dec. 1, 2016). The ALJ did not err in considering Plaintiff's work history.

**F.  Conclusion**

In summary, while some of the ALJ's findings on credibility are clear and convincing reasons supported by substantial evidence in the record, other findings are not as set forth in the opinion. In Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008), the Ninth Circuit found that two of the reasons provided by the ALJ supported an adverse credibility finding, but others did not. Where some of the reasons provided by the ALJ are not clear and convincing reasons to reject a claimant's credibility, the question is whether the decision remains legally valid, despite the error. Id. "So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." Id. (internal punctuation and citations omitted).

Here, the ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony that are supported by substantial evidence in the record. For this reason, Plaintiff's appeal of the final decision finding him not to be disabled is denied.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in finding that Plaintiff's symptom testimony was not credible.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Vernon Pierce. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**October 24, 2017**__

UNITED STATES MAGISTRATE JUDGE